UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARRY M. JENKINS,

      Petitioner,

v.                                                        Case No. 11-C-1086

FLOYD MITCHELL, Warden,
Milwaukee County Correction Facility,

      Respondent.

## DECISION AND ORDER DISMISSING HABEAS CORPUS PETITION

### I. BACKGROUND

On November 28, 2011, the petitioner, Barry M. Jenkins ("Jenkins"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. His petition was reviewed by United States District Judge J.P. Stadtmueller in order to determine whether the respondent should be ordered to file a response. Judge Stadtmueller issued an order on January 11, 2012, finding that the respondent should be required to file a response, either by way of answer or dispositive motion no later than thirty days after service of the petition upon him. As of January 23, 2012, both parties had consented to magistrate judge jurisdiction. Thus, on January 25, 2012, the case was transferred to this court for further processing and entry of final judgment.

On February 9, 2012, the respondent filed a motion to dismiss the petition, arguing that Jenkins had failed to exhaust any available state administrative or judicial remedies for challenging the revocation of his extended supervision. After fully considering the arguments presented by the parties in support of, and in opposition to, the motion, on March 27, 2012, this court denied the motion without prejudice.

In that same order denying the motion, the court ordered the respondent to file his answer to the petition not later than May 1, 2012. In accordance with that order the respondent filed his answer on May 1, 2012.

The court has now reviewed the parties' written submissions. For the reasons that follow, Jenkins's petition for a writ of habeas corpus will be dismissed.

## II. DISCUSSION

The parties' submissions demonstrate that on April 29, 2003, Jenkins was sentenced to serve five years incarceration followed by three years of extended supervision for the offense of delivery of heroin in an amount less than three grams, second offense, to which he pled guilty on February 24, 2003. (Resp't's Answer Ex. A at 1, ECF No. 17-1.) On or about April 5, 2011, he was released from prison to extended supervision. (Resp't's Answer Ex. C at 2, ECF No. 17-3.)

On October 6, 2011, Jenkins was arrested based on several claimed violations of his extended supervision, those being: possession of a firearm; pointing a firearm at an individual named Hashim Lawrence; forcibly removing Hashim Lawrence's property from his person without consent; physically assaulting Hashim Lawrence; and, failing to make regular payments towards his supervision fees or his court obligations. (Resp't's Answer Ex. C at 2, ECF No. 17-3.)

Jenkins was held in custody on these allegations from October 6, 2011, until April 2, 2012. (Resp't's Answer Ex. C at 3, ECF No. 17-3.) On February 9, 2012, and on March 20, 2012, a hearing on the recommended revocation of Jenkins's extended supervision was conducted before an Administrative Law Judge from the State of Wisconsin Division of Hearings and Appeals. (Resp't's Answer Ex. C at 1, ECF No. 17-3.) On April 2, 2012, the ALJ issued a decision finding that the Department of Corrections had "failed to present reliable evidence that Mr. Jenkins participated in the

robbery of Hashim Lawrence on October 1, 2011." (Resp't's Answer Ex. C at 3, ECF No. 17-3.) Thus, those particular allegations were dismissed. (Resp't's Answer Ex. C at 3, ECF No. 17-3.) However, the ALJ did find that Jenkins had failed "to make payment towards court obligations and supervision fees throughout this term of supervision." (Resp't's Answer Ex. C at 3, ECF No. 17-3.) The ALJ then stated:

> The time Mr. Jenkins has been held in custody pending this Final Revocation Hearing is sufficient to impress upon him the seriousness of his conduct. Pursuant to the Plotkin criteria, revocation is neither warranted nor necessary.
>
> Mr Jenkins was held in custody on a prior department hold from April 8, 2011 to May 2, 2011. He has been held in custody pending this Final Revocation Hearing since October 6, 2011. If this decision is reversed on appeal, he is entitled to custody credit for these periods of confinement.
>
> . . . .
>
> It is ordered that the extended supervision of Barry Jenkins not be revoked.

(Resp't's Answer Ex. C at 3, ECF No. 17-3.)

The heart of Jenkins's claim in his habeas corpus petition is that he was not afforded a preliminary revocation hearing prior to his final revocation hearing in violation of the Due Process Clause. *See Morrissey v. Brewer*, 408 U.S. 471, 476 n.1, 490 (1972). Indeed, as this court noted in its March 27, 2012, order denying the respondent's motion to dismiss for failure to exhaust,

> [O]ddly enough, it does not appear that Jenkins is challenging his revocation. He states in his February 28, 2012 written submission: "I would like to make clear that the petitioner is not challenging the revocation of his extended supervision; only the constitutional issues of violations of the petitioner's civil rights stemming from an unwarranted arrest and denial of his right to a preliminary hearing, resulting in violations of his Sixth and 14th Amendment [rights]."

(March 27, 2012 Order at 4, ECF No. 15.) And because it was not clear that Jenkins had received a final revocation hearing as of the date of that order, the respondent's motion to dismiss for failure to exhaust was denied without prejudice and the respondent was ordered to file an answer so that a more complete

3

picture could be presented to the court. That complete picture has now been presented.

The completed picture demonstrates that Jenkins is not currently in custody in violation of the Constitution of the United States. Indeed, he has been afforded a final revocation hearing and his extended supervision was not revoked. Thus, to the extent that he claims he was improperly not afforded a preliminary revocation hearing and, relatedly, that he was arrested without probable cause for the events involving Hashim Lawrence, such claims cannot any longer be advanced in a habeas corpus petition. This is because the court cannot afford him any federal habeas corpus relief (even assuming that the petition was not subject to dismissal for his failure to exhaust state remedies, as was previously argued by the respondent in his motion to dismiss).

"[I]n the habeas corpus context, a petitioner who is released from custody may continue to seek the writ only if the Court can offer relief because 'collateral consequences–lingering disabilities or burdens' exist." *Guarino v. Hollingsworth*, No. 08-cv-0390-MJR, 2009 WL 2853189, at *2 (S.D. Ill. Sept. 3, 2009) (*quoting D.S.A. v. Circuit Court Branch 1*, 942 F.2d 1143, 1146 n.2 (7th Cir. 1990)). But there are no collateral consequences from Jenkins's asserted denial of his right to a preliminary revocation hearing; nor are there any lingering collateral consequences of his asserted arrest without probable cause. Indeed, he was found "not guilty" of the allegations with respect to the Hashim Lawrence events.

Jenkins claims that he was taken into custody without probable cause. He presumably claims that if he had received a preliminary hearing, he would have been released from custody prior to his final hearing. Maybe so, but maybe not so. The respondent argues that the written statement Jenkins made would have provided sufficient basis for his remaining in custody pending the final hearing.

In any event, whether or not Jenkins would have been held in custody if he had been given a

4

preliminary hearing does not matter, at least for purposes of this habeas corpus proceeding. The simple fact remains that he is not currently in custody as a result of any claimed constitutional violation; nor is he currently suffering any collateral consequences of his not being provided a preliminary hearing. Thus, he is not entitled to pursue this habeas petition.

That is not to say that Jenkins may not have other means of obtaining relief, such as damages, for what he claims was a constitutional violation imposed on him. But any such claim for relief must be by way of a civil lawsuit for damages in state court and/or a 42 U.S.C. § 1983 claim.

### III.  CERTIFICATE OF APPEALABILTY

There is one final matter to address. Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts (which may be applied to this § 2241 petition pursuant to Rule 1(b)) provides, in pertinent part, as follows:

> a) Certificate of Appealability.  The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of

5

appealability to Jenkins, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision dismissing Jenkins's habeas corpus petition, none of Jenkins's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Jenkins a certificate of appealability. Of course, Jenkins retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Jenkins's petition for a writ of habeas corpus be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

6

**SO ORDERED** this 25th day of June 2012, at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge